**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANEL HARRIS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOVESHACKFANCY, LLC,<br><br>Defendant. | Civil Action No. 1:25-cv-05828-KPF<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Chanel Harris, on behalf of herself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through her attorneys as follows:

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant LoveShackFancy, LLC ("LoveShackFancy") arising from its deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on the LoveShackFancy website, LoveShackFancy advertises the price of its retail items, along with an advertisement for either free or flat rate shipping. Those pricing representations are false, however, because LoveShackFancy surreptitiously adds junk fees to consumer purchases, including a so-called "Shipping Protection" fee.

3. As discussed in detail herein, the assessment of these fees is deceptive and unfair, because: (a) LoveShackFancy sneaks these fees into consumers' shopping carts using a prechecked box; (b) the fees are nothing more than an additional cost for shipping, rendering

LoveShackFancy's promise for "free" shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

4. Thousands of e-commerce customers like Plaintiff have been assessed hidden shipping charges for which they did not bargain due to LoveShackFancy's deceptive tactics.

5. By unfairly obscuring their true shipping costs, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess such a fee.

6. Plaintiff seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

## PARTIES

7. Plaintiff Chanel Harris is a citizen and resident of Burlingame, California.

8. Defendant LoveShackFancy, LLC is headquartered in New York, New York. LoveShackFancy is engaged in the business of providing retail women's clothing.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

b. at least one member of the proposed class is a citizen of a State other than New York, § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because LoveShackFancy is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. LoveShackFancy Surreptitiously Adds Fees to Consumers' Carts

11. Here's how LoveShackFancy's deception works. When a consumer views an item on LoveShackFancy's website, the consumer is shown the price of the item.

12. When a consumer adds an item to their online shopping cart on LoveShackFancy's website, the customer is informed that orders over $175 are entitled to free shipping, and other orders are entitled to flat rate shipping. On information and belief, the precise amount that entitles a buyer to free shipping may change from time to time.

13. After the consumer clicks the large pink "ADD TO BAG" button, the consumer is taken to their shopping cart where the consumer is asked to put their contact information. Per Defendant's representations to the Court, which need to be confirmed during the formal discovery process, at the time Plaintiff made her purchase, this "Information" page, screenshot below, prompts a customer to input their contact information and shipping address. Dkt. 23, 23-1, p. 2:




14. At the time Plaintiff and the putative class members made their purchase, on the "Information" page and each subsequent page in the checkout process, the "Route Shipping Protection" checkbox was *pre-selected*, and the Shipping Protection fee was *automatically* added to the consumer's cart, as shown above. Dkt. 23, 23-1. On each page, the prechecked box was tiny, underneath the "Total" amount displayed, intentionally designed to go unnoticed by consumers, and engineered to force consumers to affirmatively opt-out of the junk fee in order to avoid it. See *id*. The fee is intentionally added while the customer is pre-occupied by inputting their shipping and payment information, and operating under the reasonable assumption that items would *not* be added to their cart that they did not affirmatively add.

15. LoveShackFancy contends that the tiny information symbol, if clicked, would have displayed an explanation of the "Shipping Protection by Route," but LoveShackFancy does not provide the content that would have been shown therein, nor does LoveShackFancy present any

evidence that Plaintiff or other putative class members actually clicked the information symbol. *Id*. In any event, the information is also tiny so as not to be seen by the reasonable consumer. *Id*.

16. Thus, if consumers even notice the very small amount added to their transactions while inputting personal, shipping, and payment information, consumers are still left entirely unaware that the added "Shipping Protection" charge is optional, because it is presented in the cart as mandatory. Indeed, this was LoveShackFancy's very intention.

17. Defendant has since ceased the automatic opt-in of consumers because it is so deceptive.

18. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive.

19. As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **<u>"[a] 'pre-checked box' does not constitute affirmative consent."</u>** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

## II. <u>The Add On Fees Render Promises of Free or Flat Rate Shipping False</u>

20. Even beyond the deceptive manner in which the fees are added, the fees themselves are deceptive because they directly contradict other promises on LoveShackFancy's website

regarding "free" shipping. That is because LoveShackFancy's add-on fees are, in actuality, a disguised shipping charge.

21. Whatever the Shipping Protection fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers.

22. But as described herein, LoveShackFancy promised "free" or flat rate shipping. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the "free" or flat rate shipping promise.

23. However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

24. Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee made at the same time as its promise of "free" or flat rate shipping.

25. Because it is well known that American consumers prefer free or low-cost shipping costs, Defendant made an intentional decision to disguise its true price for shipping from consumers.

26. The deceptively added Shipping Protection fee is a hidden shipping fee. This renders false LoveShackFancy's promise of free or flat rate shipping.

27. By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

28. In addition to the manner in which the fees are added and the fact that the added fees render other "free" or flat rate shipping promises false and deceptive, Defendant's fees are nonsense fees that provide little or no value to consumers.

## III. Defendant's "Shipping Protection" Fee Is Inaccurately Named and Described and Provides No Added Value to Consumers

29. Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" shipping, the "Shipping Protection" fees are also deceptively named and described.

30. Popular shipping services like UPS, FedEx, USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the "Shipping Protection" is entirely worthless, because they are already provided the same protection by the shippers.

31. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

32. For all these reasons, the Shipping Protection Fee is deceptively named and described.

33. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" shipping, and the fact that the "Shipping Protection" fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the "Shipping Protection" fee because it provides essentially zero additional value to consumers.

34. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee provides no benefit.

## IV. Defendant's Fees are Junk Fees and Violate Federal Guidance and California Law

35. Even worse, on information and belief, LoveShackFancy only pays the purported Shipping Insurance company Route approximately half of the Shipping Protection fee that LoveShackFancy's customers pay. The other half is retained by LoveShackFancy as pure profit.

36. Defendant's shipping fees, such as the Shipping Protection fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

37. As the FTC said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

38. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be

provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n.com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

39. Defendant violates federal guidance and New York law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

40. Defendant's conduct also violates the federal Restore Online Shopper's Confidence Act, 15 U.S.C. §§ 8401–8405. Specifically, Defendants used "'negative option'" sales [that] took advantage of consumers' expectations." *Id*., § 8401(8). Moreover, Defendant violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id*., § 8403(1), (2).

## V. **Plaintiff's Experience**

41. Plaintiff purchased made purchased items from LoveShackFancy's website on August 30, 2024.

42. When using the website, Plaintiff was repeatedly informed that she would get flat rate shipping for her purchase.

43. However, her purchase included a $2.75 charge for a "Shipping Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

44. Plaintiff did not know the charge existed or could be removed prior to her purchase.

45. Plaintiff would not have purchased Shipping Protection if she knew it was optional.

## CLASS ALLEGATIONS

46. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements. The class is defined as:

> All persons who, during the applicable statute of limitations, were charged a Shipping Protection Fee or similar fee by Defendant.

47. Plaintiff also brings this action on behalf of a California Subclass.

48. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

49. Excluded from the Class are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

50. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

51. The claims of the representative Plaintiff are typical of the claims of the Class she seeks to represent in that the representative Plaintiff, like all members of the Class, were charged

improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Class, was damaged by Defendant's misconduct in that she was charged Shipping Protection fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And Defendant has no unique defenses that would apply to Plaintiff and not the Class.

52. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

53. The questions of law and fact common to the Class include, but are not limited to, the following:

a. Whether Defendant's assessment of Shipping Protection fees was unfair, deceptive, or misleading;

b. Whether Defendant's assessment of Shipping Protection fees breached the contract;

c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

d. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

54. Plaintiff's claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Shipping Protection fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

55. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

56. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

57. Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

58. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

59. Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

60. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

61. Plaintiff hereby incorporates by reference the preceding paragraphs.

62. The deceptive acts or practices in the creation, implementation, and charging of Shipping Protection Fees emanates from California. Thus, California law is applicable on applicable on a nationwide basis.

63. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

64. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

65. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

66. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

67. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

68. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

69. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly (a) sneaking fees into consumers carts; (b) deceptively naming and describing the fees; (c) charging fees are in actuality simply the price involved in the shipping process; and (d) charging fees that provide no added value to consumers and reasonable consumers, like Plaintiff, who would not knowingly choose to pay them, absent Defendant's deception.

70. Defendants' conduct also constitutes an "unlawful" act under the UCL because it constitutes a violation of the Restore Online Shopper's Confidence Act, 15 U.S.C. §§ 8401–8405. Specifically, Defendants used "'negative option'" sales [that] took advantage of consumers' expectations." *Id.*, § 8401(8). Moreover, Defendant violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

71. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

72. The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

73. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq*.

74. Defendant's business practices have misled Plaintiff and the proposed Classes and, unless enjoined, will continue to mislead them in the future.

75. Plaintiff relied on Defendant's misrepresentations in making her purchase. Specifically, Defendant (a) deceptively added fees into consumers carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and Classes members for shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

76. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Classes members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

77. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Classes members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

78. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Classes, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

79. Plaintiff has no adequate remedy at law in part because Defendant continue to automatically add fees to all purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

**SECOND CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

80. Plaintiff hereby incorporates by reference the preceding paragraphs if fully restated here.

81. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

82. Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

83. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

84. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Classes, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

85. Further, Plaintiff requests an order awarding Plaintiff and Classes members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

86. Additionally, Plaintiff and Classes members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of Plaintiff and the California Subclass)**

87. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

88. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*. Plaintiff and each member of the proposed Classes are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The merchandise purchased by Plaintiff and the Classes are "goods" within the meaning of California Civil Code § 1761(a).

89. Defendant violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Classes which were intended to result in, and did result in, the sale of merchandise:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

90. Specifically, Defendant (a) deceptively added fees into consumers carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and Classes members for shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

91. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fail to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move

to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

92. Plaintiff also seeks public injunctive relief, as described above.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

93. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

94. Plaintiff and Defendant have contracted for the purchase of merchandise.

95. No contract provision authorizes Defendant to be able to charge add on fees to customers.

96. Defendant breached the terms of its contract with consumers by charging add on fees such as the Shipping Protection fee.

97. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

98. Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

99. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

100. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

101. Plaintiff and the Class conferred a benefit on Defendant.

102. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

103. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

104. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class seek an Order:

1. Certifying the proposed Class pursuant to Rule 23;
2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;
3. Declaring the Defendant has committed the violations of law alleged herein;
4. Providing for any and all injunctive relief the Court deems appropriate;
5. Awarding statutory damages in the maximum amount for which the law provides;
6. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;
7. Providing for any and all equitable monetary relief the Court deems appropriate;
8. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;
9. Awarding Plaintiff his reasonable costs and expenses of suit, including

attorneys' fees;

10. Awarding pre- and post-judgment interest to the extent the law allows; and

11. Providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Date: December 5, 2025

Respectfully submitted,

*/s/Amanda J. Rosenberg*

Amanda J. Rosenberg (*pro hac vice*)
Sarah M. Levin
Jeffrey D. Kaliel (*pro hac vice* forthcoming)
KalielGold PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 280-4783
slevin@kalielpllc.com
arosenberg@kalielgold.com
jkaliel@kalielpllc.com

Sophia G. Gold (*pro hac vice* forthcoming)
KalielGold PLLC
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Andrew Shamis
Shamis & Gentile, P.A.
14 NE 1st Ave, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

*Counsel for Plaintiff and the Proposed Class*