UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL HARRIS, *on behalf of herself and all others similarly situated*,<br><br>                              Plaintiff,<br><br>                    -v.-<br><br>LOVESHACKFANCY, LLC,<br><br>                              Defendant. | 25 Civ. 5828 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Chanel Harris brings this putative class action against Defendant LoveShackFancy, LLC ("LSF"). She alleges that LSF deceptively added "Shipping Protection" fees to consumers' online shopping carts without their affirmative consent through a pre-checked negative option mechanism. In her operative pleading, Plaintiff asserts five causes of action: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; (ii) false and misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500-17509; (iii) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784; (iv) breach of contract; and (v) unjust enrichment.

Before the Court are (i) LSF's motion to dismiss Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) and (ii) LSF's related request for judicial notice. For the reasons set forth below, the Court grants in part and denies in part LSF's request for judicial notice; denies LSF's motion to dismiss Plaintiff's claims under the UCL, the FAL, and the CLRA, except as to Plaintiff's theory under Section 1770(a)(29) of the CLRA; and

grants LSF's motion to dismiss Plaintiff's claims for breach of contract and unjust enrichment.

**BACKGROUND**[1]

### A.    Factual Background

#### 1.    The Parties

Plaintiff is a citizen and resident of Burlingame, California.  (FAC ¶ 7). LSF is a limited liability company headquartered in New York, New York.  (*Id.* ¶ 8).  It operates an e-commerce website that sells women's clothing to consumers nationwide.  (*Id.* ¶¶ 8, 11-12; *see also id.* ¶¶ 9, 46).

#### 2.    LSF's Practice of Adding Shipping Protection Fees to Consumers' Carts

When a customer views an item on LSF's website, the customer is shown the price of the item.  (FAC ¶ 11).  When the customer adds an item to their online shopping cart, the website informs the customer that orders over $175 are entitled to free shipping, and other orders are entitled to flat rate shipping. (*Id.* ¶ 12).[2]  Once in their shopping cart, the customer is asked to provide their contact information.  (*Id.* ¶ 13).

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #29)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

For ease of reference, the Court refers to LSF's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #34); Plaintiff's opposition to LSF's motion as "Pl. Opp." (Dkt. #39); and LSF's memorandum of law in reply as "Def. Reply" (Dkt. #41). LSF refiled its memorandum of law in support of its motion to dismiss on January 22, 2026, adding a table of authorities.  (Dkt. #38).  The Court cites the pagination of the originally filed memorandum.  (Dkt. #34).

The Court refers to LSF's request for judicial notice in support of its motion to dismiss as "Def. RJN" (Dkt. #37), and Plaintiff's opposition thereto as "Pl. RJN Opp." (Dkt. #40).

[2]    The FAC alleged that the precise amount that entitles a buyer to free shipping has varied over time.  (FAC ¶ 12).  The Court cites the threshold as alleged at the time of

2

At this stage, according to Plaintiff, LSF deceptively added "Shipping Protection" fees (the "Shipping Protection Fee," or the "Fee") to customers' online shopping carts without their affirmative consent. (FAC ¶ 14; *see id.* ¶¶ 3, 11). More specifically, when a customer attempts to purchase items on LSF's website, the Shipping Protection Fee, provided by third-party shipping insurance service Route, is automatically added to the customer's shopping cart without the customer taking any action to add the fee themselves. (*Id.* ¶¶ 14-15). The FAC characterizes the Shipping Protection Fee as a "junk fee[ ]." (*Id.* ¶¶ 1-2, 18).

The Shipping Protection Fee is added to customers' carts through a small pre-checked box underneath the "Total" amount displayed. (FAC ¶ 14). Plaintiff notes that the addition of the fee comes as the customer is occupied with inputting their shipping and payment information. (*Id.*). Somewhere on the page is a small information symbol that Plaintiff alleges is "tiny so as not to be seen by the reasonable consumer." (*Id.* ¶ 15).

In addition to the allegedly deceptive manner of adding the Shipping Protection Fee, Plaintiff also argues that the Shipping Protection Fee is deceptively named and described. (FAC ¶¶ 29-32). In this regard, Plaintiff observes that popular shipping services automatically include shipping protection for the first $100 worth of value in a package, and credit card companies and banks provide their own protections. (*Id.* ¶¶ 30-31). As a

---

Plaintiff's purchase, and considers the variation immaterial to the resolution of the instant motion.

result, Plaintiff alleges that the Shipping Protection Fee is "entirely worthless" to the "vast majority of consumers," whose carts have less than $100 in merchandise.  (*Id.* ¶ 30).

### 3.    Plaintiff's Purchase from LSF

On August 30, 2024, Plaintiff purchased items from LSF's website, loveshackfancy.com.  (FAC ¶ 41; *see* Def. Br. 3, 5).  She alleges that, during these purchases, she was repeatedly informed that she would get flat rate shipping for her purchase.  (FAC ¶ 42).  Plaintiff's purchase included a charge for the Shipping Protection Fee.  (*Id.* ¶ 43).[3]

At the time Plaintiff made her purchase, the checkbox to select Shipping Protection was pre-selected to include the Fee upon checkout.  (FAC ¶¶ 14, 43). She claims that she did not know the charge existed or that it could be removed prior to her purchase, and that she would not have purchased it had she known it was optional.  (*Id.* ¶¶ 44-45).  LSF has since ceased the automatic opt-in practice.  (*Id.* ¶ 17).

## B.    Procedural Background

On July 15, 2025, Plaintiff filed a proposed class action complaint against LSF in this Court on behalf of herself, a nationwide class, and a California subclass.  (Dkt. #1; *see* FAC ¶¶ 46-47).  Plaintiff asserts claims for relief on behalf of a putative class of LSF purchasers under California's UCL,

---

[3]     The FAC alleged a $2.75 charge for the Shipping Protection Fee.  (FAC ¶ 43).  LSF produced a declaration indicating that the actual amount charged on August 30, 2024, was $0.98.  (Migliaccio Decl., Ex. A).  Plaintiff accepts the corrected figure and has requested leave to amend if the Court finds the discrepancy material.  (Pl. Opp. 4 n.1). The Court does not find the discrepancy material to the Rule 12(b)(6) analysis.

FAL, and CLRA.  (FAC ¶¶ 61-92).  Plaintiff also brings common law claims for breach of contract and unjust enrichment on behalf of herself and the putative class.  (*Id.* ¶¶ 93-104).  The putative nationwide class is defined as "[a]ll persons who, during the applicable statute of limitations, were charged a Shipping Protection Fee or similar fee by Defendant."  (*Id.* ¶ 46).[4]

On September 19, 2025, LSF filed a pre-motion letter in anticipation of moving to dismiss Plaintiff's complaint.  (Dkt. #10).  Plaintiff responded on September 29, 2025.  (Dkt. #19).  The Court held a pre-motion conference on October 23, 2025.  (October 23, 2025 Minute Entry; *see* Dkt. #20).  At that conference, the Court requested that LSF produce a screenshot of the website as it existed on the date of Plaintiff's purchase.  (October 23, 2025 Minute Entry).  LSF filed a letter disclosing such screenshots on November 7, 2025.  (Dkt. #23-24).  In response, Plaintiff informed the Court of her intent to file an amended complaint.  (Dkt. #25-26).  On December 5, 2025, Plaintiff filed the FAC.  (Dkt. #27-29).[5]

On December 19, 2025, LSF filed another pre-motion letter in anticipation of moving to dismiss the FAC.  (Dkt. #30).  The Court declined to hold a second pre-motion conference and scheduled briefing on LSF's motion to dismiss.  (Dkt. #32).  LSF filed its motion to dismiss and supporting papers on

---

[4]    The FAC does not separately define the California subclass, which the Court understands to comprise those members of the putative nationwide class who reside in California.  (*See* FAC ¶ 47).

[5]    Plaintiff re-filed the amended complaint on December 8, 2025, due to certain non-substantive filing errors. (Dkt. #29).

January 21, 2026.  (Dkt. #33-36).  With that submission, LSF also filed a request for judicial notice.  (Dkt. #37).  Specifically, LSF requests that, in resolving LSF's motion to dismiss, the Court take judicial notice of (i) two webpages from Route — the provider of the Shipping Protection — and (ii) one Senate Committee report.  (Def. RJN 2).

On February 20, 2026, Plaintiff filed her opposition to LSF's motion to dismiss.  (Dkt. #39).  That same day, she filed an opposition to LSF's request for judicial notice.  (Dkt. #40).  On March 9, 2026, LSF filed its reply in support of its motion to dismiss.  (Dkt. #41).  About two months later, on May 8, 2026, Plaintiff notified the Court of recently decided supplemental authority, *Cantore* v. *Route App, Inc.*, No. 25 Civ. 4677 (SLE), 2026 WL 1353815 (N.D. Ill. May 7, 2026).  (Dkt. #42).  One week later, Plaintiff filed the written opinion issued in that case.  (Dkt. #43).  Both of LSF's motions are fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion, the court "draw[s] all reasonable inferences in [the plaintiff's] favor, 'assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.

2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009));

*see Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).

In ruling on a 12(b)(6) motion to dismiss, the Court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken[.]" *Samuels* v. *Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993) (citing *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)). Under Federal Rule of Evidence 201, a court may take judicial notice only of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, the court is "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Indeed, the plaintiff must do more than provide a "formulaic recitation of the elements of a cause of action" — that is, her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

7

**B.    The Court Grants in Part and Denies in Part LSF's Request for Judicial Notice**

As a preliminary matter, the Court addresses LSF's Request for Judicial Notice in support of its motion to dismiss.  (Def. RJN).  To review, LSF seeks judicial notice of three documents: (i) Route's "Shipping Protection FAQ" webpage; (ii) Route's "File and manage claims" webpage; and (iii) the Senate Committee on Commerce, Science, and Transportation's 2010 Report on S. 3386, the legislation that became the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405 ("ROSCA").  (*Id.* at 2).  The Court denies LSF's request with respect to the first two documents and grants it with respect to the third.

**1.    The Court Declines to Take Judicial Notice of the Two Route Webpages**

At this stage, "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute."  *Grecco* v. *Age Fotostock Am., Inc.*, No. 21 Civ. 423 (JSR), 2021 WL 3353926, at *3 (S.D.N.Y. Aug. 2, 2021) (internal quotation marks omitted) (quoting *Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015)).  But a court may only take judicial notice of a website for the fact the statements were made, not for the truth of the matters asserted thereon.  *Id.* (refusing to consider the defendant's website because doing so "would require accepting the truth of the website's statement"); *see also Casio* v. *Vineyard Vines, LLC,* No. 19 Civ. 5135 (JMA) (AYS), 2021 WL 466039, at *5 (E.D.N.Y. Feb. 9, 2021) (explaining that "[e]ven if the Court took

judicial notice of the website excerpts, they could not be used" "to prove the truth of their contents").

LSF's request for judicial notice fails because Plaintiff disputes the authenticity and accuracy of the aforementioned webpages. (Pl. RJN Opp. 1-2). While LSF contends that these webpages were "from a website whose authenticity is not in question" (Def. RJN 3), Plaintiff disputes the accuracy of these pages, as well as whether the webpages were active or available at the time of Plaintiff's purchase (Pl. RJN Opp. 2-3). The webpages thus do not meet the standard required for the Court to take judicial notice. *See Lesh* v. *Cable News Network, Inc.*, 767 F. Supp. 3d 33, 43 (S.D.N.Y. 2025) (refusing to take judicial notice of unauthenticated screenshots of a webpage archived from third-party website where the plaintiff disputed the webpage's authenticity and where the court could not "conclude ... that the [webpage] appeared at the time of [the plaintiff's] use of the Website").

### 2. The Court Takes Judicial Notice of the Senate Committee Report

The Court grants the request as to the Senate Committee Report, a public legislative document. (Dkt. #37, Ex. C ("Committee Rep.")). The Court "may take judicial notice of public documents, including legislative histories, not for their truth, but 'for the fact that they exist and for what is in them.'" *Lucesco Inc.* v. *Republic of Argentina*, No. 16 Civ. 7638 (LAP), 2017 WL 3741342, at *2 (S.D.N.Y. Aug. 8, 2017) (quoting *Bais Yaakov of Spring Valley* v. *Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013)). Accordingly, the Court

takes notice of the Senate Committee Report for the fact of its existence and contents, but not for the truth of any factual assertions therein.

**C.    The Court Denies LSF's Motion to Dismiss Plaintiff's California Consumer Protection Claims**

The Court next turns to the substance of Plaintiff's claims, starting with her claims under three California consumer protection statutes: the UCL, the FAL, and the CLRA.  (FAC ¶¶ 61-92).  In support, Plaintiff alleges that LSF engaged in three categories of conduct: (i) the automatic addition of the Shipping Protection Fee (*id.* ¶ 14); (ii) the false and misleading representations of free and flat rate shipping (*id.* ¶¶ 20-26); and (iii) the deceptive naming and description of the Shipping Protection Fee (*id.* ¶¶ 29-32).  Plaintiff argues that each of these actions violates at least one of the above three California consumer protection statutes.

The Court will begin by discussing the governing standards for each of the statutes.  "Courts often analyze these statutes together because they share similar attributes." *Quintanilla* v. *WW Int'l, Inc.*, 541 F. Supp. 3d 331, 344 (S.D.N.Y. 2021) (internal quotation marks omitted) (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)).  It will then determine whether Plaintiff has adequately alleged that each deceptive act constitutes a violation of one or more of the three statutes. Ultimately, the Court concludes that Plaintiff has stated a claim on all three theories under the UCL, the FAL, and the CLRA.

### 1.    The Relevant California Statutes

#### a.    The UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The "sweeping" coverage is "intentionally broad," which "allows courts maximum discretion to prohibit new schemes to defraud." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (internal quotation marks omitted) (first quoting *Cel-Tech Commc'ns, Inc.* v. *L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999); then citing *Searle* v. *Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002)). "Each prong of the UCL is a separate and distinct theory of liability." *Hughes* v. *Ester C Co.*, 330 F. Supp. 3d 862, 869 (E.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)).

Specifically, conduct is "unlawful" under the UCL's first prong when it violates some other law. *Cel-Tech*, 973 P.2d at 539-40 (explaining that the statute "'borrows violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable" (quoting *State Farm Fire & Cas. Co.* v. *Superior Ct.*, 45 Cal. App. 4th 1093, 1103 (1996))); *accord Donovan* v. *GMO-Z.com Tr. Co.*, 779 F. Supp. 3d 372, 395 (S.D.N.Y. 2025). Conduct is "unfair" under the UCL's second prong when the conduct "violates the policy or spirit of [an antitrust] law[ ] because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 973 P.2d at 544; *see Hughes*, 330 F. Supp. 3d at 870

n.11 (acknowledging that California courts split on defining the "unfair" prong, but recognizing that it generally requires a showing that a defendant's representations "are likely to deceive a reasonable consumer" (internal quotation marks omitted) (quoting *Pratt* v. *Whole Food Mkt. Cal., Inc.,* No. 5:12 Civ. 5652 (EJD), 2015 WL 5770799, at *3-4 (N.D. Cal. Sept. 30, 2015))). Conduct is "fraudulent" under the UCL's third prong when it is likely to deceive members of the public.  *Hughes*, 330 F. Supp. 3d at 870 (citing *Wang* v. *Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002)).

### b.    The FAL

The FAL prohibits any person or entity from disseminating any public advertisement that is "unfair, deceptive, untrue, or misleading."  *Quintanilla*, 541 F. Supp. 3d at 344 (internal quotation marks omitted) (quoting *Williams* v. *Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008)); *see* Cal. Bus. & Prof. Code § 17500.  An advertisement is actionable under the FAL if it "is either actually misleading or … has a capacity, likelihood or tendency to deceive or confuse the public."  *Sabatano* v. *Iovate Health Scis. U.S.A. Inc.,* No. 19 Civ. 8924 (VB), 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) (internal quotation marks omitted) (quoting *Kasky* v. *Nike, Inc.,* 45 P.3d 243, 250 (Cal. 2002)); *accord Whiteside* v. *Kimberly Clark Corp.,* 108 F.4th 771, 777 (9th Cir. 2024).

### c.    The CLRA

The third related statute, the CLRA, aims to "protect consumers against unfair and deceptive business practices," Cal. Civ. Code § 1760, by prohibiting

"unfair methods of competition and unfair or deceptive acts or practices[,]" *id.*
§ 1770; *see Quintanilla*, 541 F. Supp. 3d at 344 (discussing the conduct
prohibited under the CLRA).  As pertinent here, the statute explicitly prohibits
misrepresenting an "affiliation, connection, or association with, or certification
by, another[,]" Cal. Civ. Code § 1770(a)(3); "[r]epresenting that goods or services
have … characteristics … that they do not have," *id.* § 1770(a)(5); "[a]dvertising
goods or services with intent not to sell them as advertised," *id.* § 1770(a)(9);
"[r]epresenting that a transaction confers or involves rights, remedies, or
obligations that it does not have or involve," *id.* § 1770(a)(14); and failing to
"include all mandatory fees or charges" in advertised prices, *id.*
§ 1770(a)(29)(A).  (*See* FAC ¶ 89 (alleging violations of Sections (a)(3), (a)(5),
(a)(9), (a)(14), and (a)(29)); *see also id.* ¶ 73 (invoking Sections (a)(5) and (a)(9) of
the CLRA as predicates for the UCL's unlawful prong)).[6]

### d.    The Reasonable Consumer Test

All three statutes are "governed by the reasonable consumer
test," *Quintanilla*, 541 F. Supp. 3d at 345 (internal quotation marks omitted)
(quoting *Williams*, 552 F.3d at 938), under which a plaintiff must show that "it
is probable that a significant portion of the general consuming public … ,
acting reasonably under the circumstances, could be misled," *Stiles* v. *Trader
Joe's Co.*, No. 16 Civ. 4318 (TJH) (KSx), 2017 WL 3084267, at *3 (C.D. Cal.
Apr. 4, 2017) (internal quotation marks omitted) (quoting *Lavie* v. *Procter &*

---

[6]    Plaintiff also invokes Section 1770(a)(20), but develops no argument under that
provision in her opposition.  (*See generally* Pl. Opp.).

*Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003)); *accord de Lacour* v. *Colgate-Palmolive Co.,* No. 16 Civ. 8364 (KMW), 2024 WL 36820, at *3 (S.D.N.Y. Jan. 3, 2024). Whether a reasonable consumer would be deceived is typically a "question[ ] of fact that [is] appropriate for resolution on a motion to dismiss only in 'rare situations.'" *Reid* v. *Johnson & Johnson,* 780 F.3d 952, 958 (9th Cir. 2015) (alteration adopted) (quoting *Williams,* 552 F.3d at 939); *see also Rubenstein* v. *Neiman Marcus Grp. LLC,* 687 F. App'x 564, 566 (9th Cir. 2017) (memorandum disposition) (reversing district court decision dismissing similar claims on a Rule 12(b)(6) motion).

### 2. Plaintiff Has Stated a Claim That LSF's Automatic Addition of the Shipping Protection Fee Violates the UCL, the FAL, and the CLRA

Plaintiff first focuses on LSF's alleged automatic addition of a Shipping Protection Fee to customers' carts. Plaintiff argues that such a practice subjects LSF to liability on two theories. Ultimately, the Court agrees that Plaintiff has plausibly alleged both theories and denies LSF's motion to dismiss on these grounds.

#### a. Plaintiff Has Alleged That the Automatic Addition of the Shipping Protection Fee Could Plausibly Deceive a Reasonable Consumer

Plaintiff's first theory is that LSF's automatic addition of the Shipping Protection Fee to online consumers' carts, without affirmative consent, is likely to deceive reasonable consumers in violation of the UCL, the FAL, and the CLRA. (*See* FAC ¶¶ 16, 18-19, 69, 82, 90). As pleaded, the automatic addition of the Shipping Protection Fee could deceive a reasonable consumer. LSF

14

displays product prices without add-on fees or a warning that additional fees may be added. (*Id.* ¶¶ 11-12). Only at the checkout page does LSF automatically add the Shipping Protection Fee. (*Id.* ¶¶ 13-14). The Fee, which only appears on the checkout page and had not been mentioned before, appears *after* the total price. (*Id.* ¶¶ 13-15). A box next to the Fee is pre-checked. (*Id.* ¶ 14). The Fee does not appear until the customer is inputting their shipping and payment information and has ostensibly stopped picking items to purchase. (*Id.*).

At least three aspects of the alleged scheme could reasonably deceive a consumer. *First* is the timing. As Plaintiff points out, the act is no different than LSF adding a pair of sunglasses to a customer's shopping cart during the checkout stage without the customer's consent. (Pl. Opp. 7). Because the customer has finished shopping and is busy filling in their payment information, they are not on the lookout for items to be added to their cart.

*Second* is the specific fee at issue. Because the Fee has to do with shipping and appears at the shipping phase, the customer could reasonably believe that the Fee is mandatory. (Pl. Opp. 14). Indeed, in this way, the Fee is arguably more deceptive than adding a pair of sunglasses, because there is less chance that the customer would believe that purchasing the sunglasses was mandatory (if the customer noticed the sunglasses in their cart).

*Third* is how LSF displays the Fee. Because the Fee is small and appears after the total, the customer could reasonably believe that the total cost does not include the Fee, thus adding to the confusion about whether the Fee has

been added, and whether it is mandatory.  (Pl. Opp. 14).  Consequently, Plaintiff has adequately pleaded that the Fee would deceive a reasonable consumer.

Given the features of the scheme as alleged in the FAC, it is no surprise that courts evaluating nearly identical e-commerce structures have reached similar conclusions applying the reasonable consumer standard.  *See Ramos* v. *EyeBuyDirect, Inc.*, No. 8:25 Civ. 539 (JVS) (DFM), 2025 WL 2633103, at *1, 10 (C.D. Cal. Aug. 27, 2025) (finding that automatic addition of a shipping protection fee via a pre-checked box plausibly alleged deception under the UCL, the FAL, and the CLRA because "a reasonable consumer would not have been aware that [the fee] is optional"); *Cantore*, 2026 WL 1353815, at *4 (finding that Route's "widget design and name may deceive a reasonable consumer" because the fee is "present[ed] … as mandatory"); *see also DeMarco* v. *DNVB, Inc.*, No. 25 Civ. 3076 (GHW) (RFT), 2025 WL 4378637, at *5-6 (S.D.N.Y. Dec. 5, 2025) (applying a similar standard under New York law and finding that the checkout context made it plausible that a reasonable consumer would not understand the fee to be optional), *report and recommendation adopted in part, rejected in part*, No. 25 Civ. 3076 (GHW), 2026 WL 203742 (S.D.N.Y. Jan. 26, 2026).

LSF makes multiple arguments to the contrary, none of which succeeds. First, it argues that the Shipping Protection Fee was "sufficiently conspicuous" because it was "disclosed" on the checkout page in the same font as other line items.  (Def. Br. 11 & n.3).  But this misses the point.  Here, the alleged

16

deception came not from the lack of disclosure, but from the timing and presentation of the disclosure. Even disclosed, the Fee could deceive a consumer into believing it is mandatory. *See Ramos*, 2025 WL 2633103, at *9-10 (finding just that despite also finding that the checkbox was "conspicuous to a reasonable consumer").

LSF further argues that it displayed the Fee across three separate checkout pages. (Def. Br. 7 & n.2; *see id.* at 11). But this assertion is disputed by Plaintiff. (*See* Pl. Opp. 9). And even if true, LSF nowhere argues that the Fee appears while the customer is shopping, rather than after the customer has proceeded to checkout. At the very least, it is not enough for the Court to say that, as a matter of law, a reasonable consumer would understand the Fee as optional. *See Reid*, 780 F.3d at 958 (rejecting the argument that accurate disclosures elsewhere in the transaction defeat a plausible allegation that the overall presentation would mislead a reasonable consumer).

Finally, LSF attempts to distinguish *Ramos*, a Central District of California case with similar facts to the instant one. (Def. Br. 14-16). But in so doing, LSF misreads that case. As LSF recognizes, the court in *Ramos* ultimately allowed the plaintiff's UCL, FAL, and CLRA claims to proceed. (Def. Br. 15). *See Ramos*, 2025 WL 2633103, at *10. LSF tries to argue that *Ramos* reached its holding only because the defendant confusingly used different terms to describe the Shipping Protection Fee. (Def. Br. 15-16). Surely, that fact was part of the deception in *Ramos*. *See* 2025 WL 2633103, at *10.

17

But the court further stated that it was "convinced that a reasonable consumer would not have been aware that 'Shipping Insurance' is optional, *and* would have been confused by the use of the [different] terms." *Ramos*, 2025 WL 2633103, at *10 (emphasis added). The use of interchangeable terms was only part of the court's explanation — the lack of clarity about the Fee being optional was also relevant. *See id.* (suggesting that regardless of whether terms were used interchangeably, a reasonable consumer could still assume the charge was mandatory).

This Court harbors the same concern here. Consistent with *Ramos*, *Cantore*, and *DeMarco*, the Court concludes that Plaintiff has plausibly alleged that LSF's automatic addition of the Shipping Protection Fee is likely to mislead a reasonable consumer.

> **b.    Plaintiff Has Alleged That the Automatic Addition of the Shipping Protection Fee Could Violate ROSCA as a Predicate for UCL Liability**

Plaintiff offers an additional way in which the automatic addition of the Shipping Protection Fee subjects LSF to liability: It constitutes a violation of ROSCA that serves as a predicate for UCL liability. (FAC ¶¶ 40, 70). ROSCA was enacted in 2010 to "provide consumers with clear, accurate information" in online commerce. 15 U.S.C. § 8401. This federal statute prohibits charging consumers for goods or services sold online "through a negative option feature" unless the seller: (i) "provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information"; (ii) "obtains a consumer's express informed consent before

18

charging the consumer[ ]"; and (iii) "provides simple mechanisms for a consumer to stop recurring charges." *Id.* § 8403.

A "negative option feature" is a provision in an offer or agreement for the sale of goods or services "under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." *United States* v. *MyLife.com, Inc.*, 499 F. Supp. 3d 757, 761 (C.D. Cal. 2020) (internal quotation marks omitted) (quoting 16 C.F.R. § 310.2(w)).  ROSCA expressly incorporates this definition, prohibiting negative option marketing as described in the Telemarketing Sales Rule, 16 C.F.R. pt. 310.  *See* 15 U.S.C. § 8403.  The statutory text only confirms its breadth:  The definition of "negative option feature" does not itself mention recurring payments.  LSF's pre-checked Shipping Protection Fee fits within this definition.

Plaintiff specifically argues that the Fee is a negative option feature, and that LSF did not satisfy the first or second requirements to render such a Fee permissible.  LSF does not contest that the Fee constitutes a negative option feature.  Instead, it contends that ROSCA applies exclusively to recurring subscription charges, and that the Shipping Protection Fee — a one-time, discrete charge through a third-party provider — falls outside the statute's scope.  (Def. Br. 18).  Ultimately, Plaintiff has the better of the argument.

It is true that, as LSF notes, ROSCA mentions "recurring charges" in its text, 15 U.S.C. § 8403, and its legislative history describes the statute as a response to membership clubs that automatically charged recurring fees to

consumers without the consumers' consent.  (Committee Rep. 4; *see also* 15 U.S.C. § 8401(8) (explaining that process)).  In a similar vein, LSF leans on *United States* v. *MyLife.com, Inc.*, which observed that "ROSCA's text itself mentions 'recurring charges' — a clear reference to a subscription or program that renews automatically unless the consumer takes action to prevent it."  499 F. Supp. 3d at 762.  (*See* Def. Br. 18-19).  However, that case concerned a recurring monthly subscription, such that the court had no occasion to consider whether ROSCA's disclosure and consent requirements reach one-time negative option charges.  Indeed, the court's explanation in *MyLife.com, Inc.* considered the automatic renewal scheme "a textbook example of a negative option feature," rendering the charge at issue comfortably *within* the contours of ROSCA, rather than a construction of the statute's outer limits. *MyLife.com, Inc.*, 499 F. Supp. 3d at 762.

In rejecting that defendant's attempt to narrow the statute's reach, the court held that "ROSCA's text requires the conclusion" that the statute applied, *MyLife.com, Inc.*, 499 F. Supp. 3d at 762-63, and it applied the incorporated regulatory definition — turning on whether the consumer's "silence or failure to take an affirmative action" is treated as acceptance, 16 C.F.R. § 310.2(w) — without any suggestion that the frequency of billing is dispositive.  The Court recognizes that ROSCA is most often applied in the context of recurring charges, as seen in *MyLife.com, Inc.*  At the same time, the Court is unpersuaded by LSF's argument that the mismatch between the schemes that

gave rise to ROSCA and the scheme present here exempts LSF's conduct from the statute's reach.

In "statutory construction … , the beginning point must be the language of the statute." *New York* v. *U.S. Dep't of Homeland Sec.,* 969 F.3d 42, 64 (2d Cir. 2020) (internal quotation marks omitted and alteration adopted) (quoting *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)).  Only "[i]f the statutory text is ambiguous" do courts look beyond the text at congressional intent.  *Id.* (internal quotation marks omitted) (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc.* v. *EPA*, 846 F.3d 492, 512 (2d Cir. 2017)).  Indeed, "'the fact that a statute has been applied in situations not expressly anticipated by Congress' does not demonstrate ambiguity; instead, it simply 'demonstrates the breadth' of a legislative command." *Bostock* v. *Clayton County*, 590 U.S. 644, 674 (2020) (alterations adopted) (quoting *Sedima, S.P.R.L.* v. *Imrex Co.,* 473 U.S. 479, 499 (1985)).

The text of ROSCA here covers LSF's alleged conduct.  As described above, the Shipping Protection Fee qualifies as a negative option feature.  *See* 16 C.F.R. § 310.2(w).  To avoid liability, then, the Fee would have to satisfy all three requirements of 15 U.S.C. § 8403.  Ultimately, Plaintiff has sufficiently pleaded that LSF fails the first and second requirements.[7]

---

[7]   Because the Shipping Protection Fee is a one-time charge, LSF's obligation under Section 8403(3) to provide "simple mechanisms for a consumer to stop recurring charges" is automatically satisfied:  There are no recurring charges to stop.  15 U.S.C. § 8403(3).  That one of the statute's three requirements is necessarily met in a given transaction does not suggest that the statute's prohibition excludes that transaction.

On the first requirement, Plaintiff has sufficiently pleaded that LSF did not "clearly and conspicuously disclose[ ] all material terms of the transaction before obtaining the consumer's billing information." 15 U.S.C. § 8403(1). The Court recognizes that *Ramos* rejected the argument that the Fee was not conspicuous to a reasonable consumer. 2025 WL 2633103, at *10 (finding that "the toggle to opt-out of 'Shipping Protection' is … conspicuous to a reasonable consumer"). But *Ramos* only considered whether the Fee itself was conspicuous, not whether its "material terms of the transaction" were conspicuous. Here, for many of the same reasons stated above, Plaintiff has adequately pleaded that at least one material term of the transaction — that the Fee was optional, not mandatory — was not clearly and conspicuously disclosed.

In addition, and for similar reasons, Plaintiff has adequately alleged that LSF failed to satisfy the second requirement, which is that LSF obtain the "consumer's express informed consent before charging the consumer." 15 U.S.C. § 8403(2). That is because Plaintiff would reasonably be confused about whether the Fee was optional, and thus her acceptance of the total price lacks "express informed consent." *Id.* Consequently, Plaintiff has sufficiently alleged that LSF has violated ROSCA, which gives rise to liability under the UCL.[8]

---

[8]    The Court declines to consider whether the FAC also states a claim under the statute's "unfair" prong because Plaintiff does not argue that theory in her opposition. (*See generally* Pl. Opp.).

22

**3.    Plaintiff Has Stated a Claim That LSF's Free and Flat Rate Shipping Representations Are False and Misleading**

Next, Plaintiff argues that LSF's advertised promise of "free" or flat rate shipping is rendered false and misleading by the automatic addition of a Shipping Protection Fee that functions as a disguised shipping charge, in violation of the FAL and, in turn, the UCL's "fraudulent" and "unlawful" prongs. (FAC ¶¶ 22-26).  LSF responds that "[s]hipping protection is a separate and distinct service from shipping itself, and each was offered at its advertised price."  (Def. Br. 11 (emphasis omitted)).  Ultimately, the Court concludes that Plaintiff has plausibly alleged that LSF's shipping representations could mislead a reasonable consumer and therefore denies LSF's motion as to this theory.

To begin, LSF argues that shipping and shipping protection are categorically distinct services:  One moves the package, and the other allocates the risk of loss while the package moves.  (*See* Def. Br. 11-12; Def. Reply 6).  LSF describes shipping protection as "a charge actually incurred to ship the physical good to a consumer ... that exists *independently* from the shipping itself.  (Def. Br. 12).  The *DeMarco* report and recommendation previously recognized as much, observing that "a reasonable consumer would understand the difference between shipping and shipping protection."  *DeMarco*, 2025 WL 4378637, at *5 (citing *Ramos*, 2025 WL 2633103, at *8).

But the Court cannot agree at this stage.  Even though shipping and shipping protection are not exact substitutes, a reasonable consumer could believe that the broader category — "shipping" — included the narrower

23

category — "shipping protection." Indeed, the parties appear to agree that standard shipping services extend beyond the bare movement of the item and include certain protections for consumers. (FAC ¶¶ 30-31; *see also* Def. Br. 12-13; Pl. Opp. 11). Consequently, LSF's advertisement of free or flat rate shipping may have been misleading to a reasonable consumer.

Furthermore, the timing of LSF's addition of the Shipping Protection Fee adds to the misleading nature of LSF's other shipping representations. Because the Fee appears within the shipping phase of the checkout flow (FAC ¶¶ 12-14), a reasonable consumer could have already internalized LSF's free shipping guarantee and had less time to inquire into what makes the Shipping Protection Fee unique from the supposedly free shipping. To make matters worse for LSF, the only available description of what the Fee entails on LSF's website can be found from a "tiny information symbol." (FAC ¶¶ 14-15; Pl. Opp. 12). That is certainly insufficient to clear up any confusion about how the Shipping Protection Fee related to LSF's free shipping representation. *See Williams*, 552 F.3d at 939 ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

In sum, a consumer could reasonably believe that a shipping fee includes shipping protection. And LSF did not sufficiently explain the difference between any shipping fee and the Shipping Protection Fee. Consequently, Plaintiff has plausibly alleged a viable claim under the FAL, as well as UCL's

24

"fraudulent" and "unlawful" prongs, based on LSF's shipping representations. LSF's motion to dismiss is denied as to this theory.

### 4. Plaintiff Has Stated a Claim That the Shipping Protection Fee Is Deceptively Named and Described

Plaintiff's third theory is that the Shipping Protection Fee is deceptively named and described in violation of the UCL and the CLRA because it duplicates protections consumers already possess, and accordingly provides little or no value to a reasonable consumer. (FAC ¶¶ 29-34). In support, the FAC alleges that major carriers automatically include shipping protection for packages valued up to $100 at no additional cost, and that consumers retain the ability to dispute charges for undelivered or damaged orders with credit card issuers. (*Id.* ¶¶ 30-31). The FAC further alleges that LSF retained approximately half of each fee as profit, remitting the remainder to third-party provider Route. (*Id.* ¶ 35).[9] Ultimately, the Court concludes that Plaintiff has stated a claim on this theory.

Plaintiff first argues that the Shipping Protection Fee offers little discernible benefit to the many purchasers whose orders fall below $100, arguing that this renders the Fee redundant for most consumer purchases. (FAC ¶¶ 30-31). LSF disputes Plaintiff's characterization that the Fee is worthless, contending that Route's protection covers the full cost of an order,

---

[9]  The Court notes that the FAC presents the deceptive-naming theory and the lack-of-value allegations together. (*See* FAC ¶¶ 29-34). Both revolve around a single question: whether the Fee's name and description misrepresent the value it actually provides. Framed in this manner, whether the Fee is categorically worthless is not dispositive. A charge that confers *some* value may nonetheless be deceptively labeled if its name and presentation materially overstate that value.

including shipping and taxes, while carrier-provided protection is capped at $100.  (Def. Br. 12-13).  LSF also observes that Plaintiff's actual order on August 30, 2024, totaled $118.42, such that carrier protection would not have fully covered her purchase.  (*Id.* at 13 & n.6; Migliaccio Decl., Ex. A).

Even if the Shipping Protection Fee offers some value to consumers who made purchases over $100, that does not negate the fact that the fee is deceptively named.  A consumer who makes a $110 purchase could reasonably believe that the Shipping Protection Fee is what protects their entire purchase, when in fact the Fee supplies protection, at most, only as to the incremental value that exceeds the carrier's automatic coverage.  That credit card companies provide similar coverage by allowing consumers to dispute charges for undelivered or damaged orders further weakens LSF's defense.

And as explained above, LSF provided information about the Shipping Protection Fee only if the consumer pressed on a "tiny" information icon.  (FAC ¶ 15).  Absent any readily accessible description, the icon alone conveyed to consumers what they were purchasing.  The term "Shipping Protection" plausibly conveys to a reasonable consumer that, without the Fee, their shipment would go unprotected, despite carriers already insuring packages up to $100 at no cost.  (*Id.* ¶¶ 30-31).  A consumer who cannot readily learn what "Shipping Protection by Route" is, or whether she already enjoys equivalent protection, is plausibly deceived by the label itself.

Not surprisingly, California consumer protection claims have been sustained on analogous theories.  *See Ehret* v. *Uber Techs., Inc.*, 68 F. Supp. 3d

1121, 1135 (N.D. Cal. 2014) (collecting cases and recognizing that "under the UCL even a mandatory charge can be deceptive if it is labeled as something it is not").  For example, in *Ehret*, Uber's automatic 20% charge, labeled as a "gratuity … automatically added for the driver," conferred real value on consumers.  *Id.* at 1127 (internal quotation marks omitted).  However, the claim in *Ehret* survived because Uber allegedly retained a substantial portion of the charge for itself, such that the label misdescribed what the consumers were buying.  *Id.*  Indeed, there is a "longstanding rule" that a mandatory charge can be deceptive if it is misdescribed under the UCL.  *Id.* at 1135 (citing *McKell* v. *Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471-72 (2006)); *see also Blessing* v. *Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 454-55 (S.D.N.Y. 2010) (applying California law and sustaining CLRA claims where a disclosed "royalty fee," represented as a pass-through of the defendant's increased royalty costs, in fact exceeded those costs and served as an additional revenue source); *People* v. *Dollar Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 129 (1989) (holding that a rental car company violated the UCL by charging customers purported "retail cost" of repairs to damaged vehicles while paying discounted rates for profit).

Here, the FAC alleges that LSF retained approximately half of each Shipping Protection Fee as profit (FAC ¶ 35), and that much of the "protection" the Fee's name promises is protection that consumers already possess for free (*id.* ¶¶ 30-31).  The Court concludes that Plaintiff plausibly alleges that the Shipping Protection Fee is deceptively named and described within the

meaning of the UCL and the CLRA.  LSF's motion to dismiss is accordingly denied as to this theory.

### 5.    Plaintiff Has Not Stated a Viable Theory Under Section 1770(a)(29) of the CLRA

Plaintiff separately contends that LSF violated the newest CLRA provision, known as the "Honest Pricing Law," which prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges," excluding taxes and certain shipping costs.  Cal. Civ. Code § 1770(a)(29)(A).  (*See* FAC ¶ 89(f); Pl. Opp. 15-16).[10]  Plaintiff argues that LSF "engineer[ed] its checkout flow to make the [Shipping Protection Fee] appear mandatory by both placing it directly into consumers' carts and automatically opting consumers into paying it." (Pl. Opp. 15).  LSF responds that the Fee falls outside the provision because it is not, in fact, mandatory. (Def. Reply 8-9).

The Court agrees with LSF.  By its own terms, Section 1770(a)(29) reaches only "mandatory fees or charges."  Cal. Civ. Code § 1770(a)(29)(A).  In substance, it prohibits advertising a lower price for a good or service and then requiring a greater price when it comes time for the consumer to make the purchase.  Plaintiff's allegations here are not a good fit.

The FAC's own allegations establish that the Fee was optional:  The pre-checked box could be unchecked, and the Fee could be removed prior to purchase.  (FAC ¶ 14).  That a reasonable consumer could plausibly *perceive*

---

[10]    The provision took effect on July 1, 2024, before Plaintiff's purchase on August 30, 2024. (FAC ¶ 41).

the Shipping Protection Fee as mandatory — an allegation the Court has credited in sustaining Plaintiff's other theories — speaks to the deceptive presentation of an optional charge.  It does not render that charge mandatory.

For this reason, *Patterson* v. *WEX, Inc.,* No. 25 Civ. 8557 (RS), 2026 WL 370183 (N.D. Cal. Feb. 10, 2026) — the only case on which Plaintiff relies for support (Pl. Opp. 15) — is inapposite.  In *Patterson*, the district court determined that the CLRA could apply when the defendant charged a fee that the defendant claimed was optional but was really mandatory.  *Patterson*, 2026 WL 370183, at *5.  The situation here is the opposite:  Plaintiff expressly recognizes that the Shipping Protection Fee is not mandatory.  (*See* FAC ¶ 14).  As a result, Plaintiff's CLRA claim may not proceed on a Section 1770(a)(29) theory, though the broader CLRA claim survives for the reasons stated above.

### 6.    Plaintiff Has Adequately Pleaded Reliance on LSF's Misrepresentations

Lastly, as to the California consumer protection claims, LSF argues that Plaintiff fails to plausibly allege reliance on any misrepresentation from the company's advertising.  (Def. Br. 16-17).  To bring claims under the UCL, the FAL, and the CLRA, "a plaintiff must allege some form of actual reliance." *Ramos*, 2025 WL 2633103, at *10 (citing *Clark* v. *Perfect Bar, LLC*, 816 F. App'x 141, 142 (9th Cir. 2020) (memorandum disposition)); *see also Hughes*, 330 F. Supp. 3d at 870 ("To prevail under the UCL, FAL, and the CLRA, a plaintiff must demonstrate that she 'actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance.'" (quoting *Wilson* v. *Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal.

2017))).  Reliance is adequately pleaded "where a plaintiff pleads that he saw and relied on the defendant's false or misleading representation when purchasing the defendant's product, and that he would not have purchased the product absent the false or misleading misrepresentation."  *Chang* v. *Fage USA Dairy Indus., Inc.*, No. 14 Civ. 3826 (MKB), 2016 WL 5415678, at *8 (E.D.N.Y. Sept. 28, 2016) (citing *Kwikset Corp.* v. *Superior Ct. of Orange Cnty.*, 246 P.3d 877, 888-89 (Cal. 2011)).

Plaintiff alleges that she relied on LSF's promise of flat rate shipping in making her purchase, that she did not see the Fee, did not know it existed, and did not know it could be removed prior to purchase.  (FAC ¶¶ 41-45).  She would not have purchased Shipping Protection had she known it was optional.  (*Id.* ¶ 45).  "[B]ecause [Plaintiff] may have removed the additional fee absent [LSF]'s representations, she has plausibly alleged reliance."  *Ramos*, 2025 WL 2633103, at *11.

LSF recognizes all of this.  (Def. Br. 16-17).  Yet it still argues that Plaintiff's pleading is inadequate, claiming that her reliance was unjustifiable as a matter of law because the checkbox adjacent to the Fee "clearly and conspicuously disclosed" that it was optional.  (*Id.* at 17 (emphasis omitted); Def. Reply 7-8).  Having already determined, *supra*, that a reasonable consumer might not have understood the optional nature of the Shipping Protection Fee, the Court disagrees with LSF's argument.  The Court thus denies LSF's motion to dismiss Plaintiff's California consumer protection claims on reliance grounds.  *See Reid*, 780 F.3d at 958 ("[The plaintiff] undoubtedly

30

satisfied this individual reliance requirement, as he alleged that he would not have been willing to pay as much as he did for [the product] ... if he had not been misled by ... misrepresentations[.]").

## D.    The Court Grants LSF's Motion to Dismiss Plaintiff's Breach of Contract Claim

The Court now turns to Plaintiff's common law claims, beginning with her breach of contract claim. Under New York law, "to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, [i] the existence of a contract between herself and that defendant; [ii] performance of the plaintiff's obligations under the contract; [iii] breach of the contract by that defendant; and [iv] damages to the plaintiff caused by that defendant's breach." *Grewal* v. *Cuneo Gilbert & LaDuca LLP,* No. 13 Civ. 6836 (RA), 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018) (internal quotation marks omitted and alteration adopted) (quoting *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011)), *aff'd* 803 F. App'x 457 (2d Cir. 2020) (summary order). Under California law, the elements are the same. *See Oasis W. Realty, LLC* v. *Goldman,* 250 P.3d 1115, 1121 (Cal. 2011) (providing the four elements).

In substance, LSF provides three arguments as to why Plaintiff's breach of contract claim fails. *First,* LSF argues that the mere "[f]ailure to allege which state law governs a common law claim is grounds for dismissal." (Def. Br. 20 (internal quotation marks omitted) (quoting *Kavehrad* v. *Vizio, Inc.,* No. 8:21 Civ. 1868 (JLS) (DFM), 2022 WL 16859975, at *3 (C.D. Cal. Aug. 11, 2022))). *Second,* LSF argues that Plaintiff has not pleaded her claim of breach with

31

sufficient particularity, which dooms Plaintiff's claims under both California and New York law.  (*Id.* at 20-21).  *Third*, LSF argues that Plaintiff could not plead a breach of the sales contract even if she had pleaded with sufficient particularity.  (*Id.*).  The Court disagrees with the first argument but agrees with the latter two, which are related.

### 1. The Court Need Not Decide Whether New York or California Law Governs Plaintiff's Breach of Contract Claim

First, the Court considers the preliminary issue of whether New York or California law governs Plaintiff's breach of contract claim.  "A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state."  *Beth Isr. Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 582 (2d Cir. 2006) (citing *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *Md. Cas. Co.* v. *Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) (internal quotation marks omitted) (quoting *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993)).

Here, there is no conflict between California and New York law, "so the Court need not make a final determination as to whether [California] or [New York] law governs."  *Urb. Eng'rs of N.Y., D.P.C.* v. *Urb. Eng'rs, Inc.*, No. 24 Civ. 6249 (KPF), 2026 WL 861649, at *14 n.12 (S.D.N.Y. Mar. 27, 2026) (citing *In re Allstate Ins. Co.*, 81 N.Y.2d at 223).  That is because Plaintiff's breach of contract claim must be dismissed under both California and New York law.

### 2.    The Court Declines to Dismiss Plaintiff's Breach of Contract Claim for Failing to Allege Which State Law Governs

LSF's opening salvo that Plaintiff needed to specify which state law governs her common law claim in her pleading fails to persuade the Court. Indeed, the court in *Kavehrad* noted that the rule was present "in the Ninth Circuit," but it made no assertions about whether it was required under California law or outside the circuit.  2022 WL 16859975, at *3; *see also Romero* v. *Flowers Bakeries, LLC*, No. 14 Civ. 5189 (BLF), 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016) ("[C]ourts *in this district* have held that … failure to allege which state law governs a common law claim is grounds for dismissal." (emphasis added)).

The Second Circuit does not have an analogous pleading requirement. Indeed, when the parties are silent as to which state's law governs, courts in this Circuit "must determine which state's law is to be applied," rather than dismiss the action.  *Jones* v. *Abel*, No. 25 Civ. 779 (LJL), 2025 WL 2821370, at *8 (S.D.N.Y. Oct. 3, 2025); *see also N. Shore Window & Door, Inc.* v. *Andersen Corp.*, No. 19 Civ. 6194 (ENV) (ST), 2021 WL 4205196, at *8 (E.D.N.Y. Aug. 3, 2021) ("[W]hen the complaint and its attachments do not contain sufficient allegations to determine which state's law applies, a court must consider whether a plaintiff has stated a plausible claim to relief under any potentially applicable law." (internal quotation marks omitted and alteration adopted) (quoting *Halberstam* v. *Allianz Life Ins. Co. of N.A.*, No. 16 Civ. 6854 (ARR) (ST), 2017 WL 10187689, at *3 (E.D.N.Y. June 9, 2017))).  Accordingly, the Court

33

declines to dismiss Plaintiff's breach of contract claim for failure to comply with a Ninth Circuit pleading standard unrelated to substantive California state law.

> ### 3. LSF Did Not Breach Any Contractual Obligation, Under Either California or New York Law, by Charging the Shipping Protection Fee

The FAC alleges that the parties contracted for the purchase of merchandise. (FAC ¶ 94). Plaintiff's theory of breach is as follows: "No contract provision authorizes Defendant to be able to charge add on fees to customers," so LSF "breached the terms of its contract with consumers by charging add on fees such as the Shipping Protection fee." (*Id.* ¶¶ 95-96).

LSF argues that Plaintiff fails to allege any breach because the terms of the sales contract applied to *both* items listed in Plaintiff's cart, and Plaintiff saw and knew about the Shipping Protection Fee prior to purchase and acceptance. (Def. Br. 20-21). Put simply, the offer that Plaintiff accepted included a price for both the items in her cart and the Fee, so she received exactly what she bargained for. (*Id.*; *see id.* at 4). Plaintiff responds that she did not contract to purchase Shipping Protection, and LSF "snuck Shipping Protection into her online shopping cart, and charged her for it." (Pl. Opp. 22).

LSF is correct, in part because Plaintiff had inquiry notice of the Fee prior to completing the transaction. While Plaintiff alleges that she "did not know the charge existed or could be removed prior to her purchase" (FAC ¶ 44), under New York and California law, "[a]ctual notice of certain contractual terms is not required for a party to be bound if he is on inquiry notice of them and assents to them," *Aminoff & Co. LLC* v. *Parcel Pro, Inc.,* No. 21 Civ. 10377

(AT) (KHP), 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022) (citing *Starke* v. *SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019)); *accord Landon* v. *TSC Acquisition Corp.*, No. 2:23 Civ. 1377 (SVW) (PD), 2024 WL 5316981, at *3-4 (C.D. Cal. Apr. 10, 2024).

Plaintiff's theory requires the Court to find that the parties created a binding contract *before* Plaintiff completed the purchase, but neither California nor New York law allows for that. Under New York law, an online contract is "formed when a consumer with inquiry notice of the terms unambiguously manifests assent." *DeMarco*, 2025 WL 4378637, at *8 (first citing *Edmundson* v. *Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023); then citing *Wu* v. *Uber Techs., Inc.*, 43 N.Y.3d 288, 302-04 (2024)). Here, though Plaintiff could have been reasonably deceived by the Shipping Protection Fee, the FAC and its exhibits establish that she was on inquiry notice of it before completing the purchase: the Shipping Protection Fee was displayed in her shopping cart as a separate line item with a listed charge, in the same font and size as the other line item in the cart. (FAC ¶ 13; *see* Dkt. #23-1). Only by proceeding through checkout and completing the purchase did Plaintiff manifest assent to the terms of the purchase for the items in her cart, including the displayed Shipping Protection Fee. *See Edmundson*, 85 F.4th at 707-08 (finding that the plaintiff unambiguously manifested assent to defendant's terms upon finalizing her purchase); *DeMarco*, 2025 WL 4378637, at *8 (reaching the same conclusion under essentially the same facts). Under New York law, the contract that was

35

formed included the Shipping Protection Fee, and it was performed according to its terms.

Applying California law yields the same conclusion.  *See, e.g., Cavanaugh* v. *Fanatics, LLC*, 738 F. Supp. 3d 1285, 1294 (E.D. Cal. 2024) ("An online contract is formed under California law where [i] 'the website provides reasonably conspicuous notice of the terms to which the consumer will be bound,' and [ii] 'the consumer takes some action, such as clicking a button … that unambiguously manifests his or her assent to those terms.'" (quoting *Oberstein* v. *Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023))); *Patrick* v. *Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) ("[The plaintiff] manifested assent to the Terms by clicking the 'Place Order' button to complete his purchase.").

That said, Plaintiff is right to point out that the court in *Ramos* reached the opposite conclusion from the one the Court reaches here.  In that case, which applied California law to very similar facts, the district court allowed the plaintiff's breach of contract claims to proceed.  *Ramos*, 2025 WL 2633103, at *11-12.  There, the court found that the parties entered into a contract when the defendant "offered free shipping and actually rendered performance by excluding standard shipping costs … at checkout," and the plaintiff "accepted the offer by proceeding through checkout."  *Id.* at *12.  The court then held that the plaintiff had adequately alleged a breach because the Shipping Protection Fee violated the offer for free shipping.  *Id.*

36

The Court respectfully disagrees with *Ramos*'s analysis, even applying California law.  Under California law, an advertisement for free shipping is not an offer of a contract.  *Frezza* v. *Google Inc.*, No. 5:12 Civ. 237 (RMW), 2013 WL 1736788, at \*3 (N.D. Cal. Apr. 22, 2013) ("It is a well-established rule that an advertisement generally does not constitute an offer.").  But "where the offer is accepted by rendering a performance rather than providing a promise, an advertisement could form the basis of a unilateral contract if a party renders the performance."  *Id.* (citing *Sateriale* v. *R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 787 (9th Cir. 2012)).

According to *Ramos*, exactly that had occurred — the parties had formed a contract with free shipping as a term through the defendant's performance. *Ramos*, 2025 WL 2633103, at \*12.  And the defendant breached that contract by charging the Shipping Protection Fee alongside free shipping.  *Id.*  But this conception is internally inconsistent.  If the Shipping Protection Fee contravened the free shipping offer, then free shipping never became part of the contract because it was never performed.  Conversely, if the Shipping Protection Fee did not contravene the free shipping offer, such that the free shipping offer was performed, then there is no breach of the free shipping offer. Plaintiff cannot have it both ways.

Put another way, an event could not both *create* a contractual term and *violate* that contractual term in the same breath.  *See Genetec, Inc.* v. *PROS, Inc.*, No. 20 Civ. 7959 (AJN), 2021 WL 4311208, at \*9 (S.D.N.Y. Sept. 21, 2021) ("No contract can be breached before it is formed."); *Holland* v. *BP Am., Inc.*, No.

37

Civ. S-11-580 (KJM) (CMK), 2012 WL 761980, at *5 (E.D. Cal. Mar. 7, 2012) (findings and recommendations) ("Before there can be a breach of contract, there must be a contract in existence."); *Anders* v. *Mobil Chem. Co.*, 559 N.E.2d 1119, 1125 (Ill. App. Ct. 1990) ("We know of no case where a single document has been found to both create and breach a contract[.]").  The better interpretation follows *DeMarco* in holding that a contract was not formed until the plaintiff manifested intent through completing the checkout process, such that free shipping never became a contractual term.  *See* 2025 WL 4378637, at *8.  Indeed, unlike in *Ramos*, Plaintiff's operative pleading here does not even argue that free or flat-rate shipping was a term of the parties' contract, instead arguing that no provision authorized add-on fees.  (*See* FAC ¶¶ 95-96).

Plaintiff's remaining allegations are that the Fee was pre-selected, automatically added to the consumer's cart, and deceptively named.  (FAC ¶¶ 14, 29).  While these allegations speak to how LSF *induced* Plaintiff to enter into the sales contract, they have nothing to do with LSF's *performance* of that contract.[11]  Accordingly, Plaintiff has not alleged a valid breach of contract claim under either California or New York law.

### E.    The Court Grants LSF's Motion to Dismiss Plaintiff's Unjust Enrichment Claim

As with Plaintiff's breach of contract claim, the Court need not decide whether California or New York law applies to Plaintiff's unjust enrichment

---

[11]    Plaintiff only raises a claim that LSF breached its contract with Plaintiff, not a claim that LSF fraudulently induced Plaintiff to enter into the contract in the first place.  (*See* FAC ¶¶ 93-98).

claim because there is no conflict between the two laws. *See In re Allstate Ins. Co.*, 81 N.Y.2d at 223. That is because the claim must be dismissed under both California and New York law.

Under California law, "courts have repeatedly held that 'there is no cause of action in California for unjust enrichment.'" *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (quoting *Melchior* v. *New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794 (2003)); *accord Everett* v. *Mountains Recreation & Conservation Auth.*, 239 Cal. App. 4th 541, 553 (2015). Rather, California law recognizes unjust enrichment as "a general principle underlying various legal doctrines and remedies." *Dias* v. *Spartan Micro, Inc.*, No. 8:22 Civ. 834 (JVS) (KES), 2022 WL 17216820, at *7 (C.D. Cal. Sept. 14, 2022) (internal quotation marks omitted) (quoting *Melchior*, 106 Cal. App. 4th at 793).

But "[t]he Ninth Circuit has instructed district courts to construe claims for unjust enrichment under California law as quasi-contract claims." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (collecting cases, including *Astiana* v. *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). In California, "[t]he elements of a claim of quasi-contract or unjust enrichment are [i] a defendant's receipt of a benefit and [ii] unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd.* v. *Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing *Peterson* v. *Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)). Importantly, however, "a quasi-contract cause of action does not lie where … express binding agreements exist

39

and define the parties' rights." *Id.* (internal quotation marks omitted) (quoting *Cal. Med. Ass'n, Inc.* v. *Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001)). Here, Plaintiff has no quasi-contract claim under California law because the parties agree "that express contracts governed the parties' relationship. *MH Pillars Ltd.*, 277 F. Supp. 3d at 1094.

The result under New York law is the same. In New York, like in California, "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement.*" *LBA Int'l Ltd.* v. *C.E. Consulting LLC*, No. 08 Civ. 6797 (SAS), 2010 WL 778019, at *3 (S.D.N.Y. Mar. 5, 2010) (internal quotation marks omitted) (quoting *Beth Isr. Med. Ctr.*, 448 F.3d at 586-87). As the name implies, unjust enrichment "is premised on the notion that one should not be allowed to be enriched at the expense of another." *Precision Testing Lab'ys, Ltd.* v. *Kenyon Corp. of Am.*, 644 F. Supp. 1327, 1350 (S.D.N.Y. 1986) (citing *Reprosystem, B.V.* v. *SCM Corp.*, 727 F.2d 257, 263 (2d Cir. 1984)).

Stating a claim for unjust enrichment in New York requires a plaintiff to "allege that [i] [the] defendant was enriched; [ii] the enrichment was at [the] plaintiff's expense; and [iii] the circumstances were such that equity and good conscience require [the] defendant[ ] to make restitution." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 384 (S.D.N.Y. 2024) (internal quotation marks omitted) (quoting *Labajo* v. *Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 530-31 (S.D.N.Y. 2007)); *accord Briarpatch Ltd., L.P.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). As discussed, the parties and

40

the Court agree that an enforceable contract was formed between Plaintiff and LSF at some point during Plaintiff's online purchase.  (FAC ¶ 94; Def. Reply 11).  Because an express agreement governs the subject matter of Plaintiff's FAC, including the price she paid and the fees included in the transaction, Plaintiff may not pursue a quasi-contractual theory of recovery on the same transaction.

In response, Plaintiff invokes Federal Rule of Civil Procedure 8(d)(3) as entitling her to plead unjust enrichment in the alternative "[t]o guard against the possibility that Plaintiff's breach of contract claim and state consumer protection claims do not survive[.]"  (Pl. Opp. 24-25).  *See Garson* v. *Garson*, No. 16 Civ. 6167 (KPF), 2017 WL 2915386, at *9 (S.D.N.Y. July 6, 2017) (permitting alternative pleading of breach of contract and unjust enrichment where defendants disputed the existence of a valid contract); *Pinzon* v. *Pepperdine Univ.*, No. 20 Civ. 4928 (DMG) (KSx), 2021 WL 3560782, at *7 n.5 (C.D. Cal. Aug. 5, 2021) ("[Q]uasi-contract claims may be pled in the alternative to contract claims." (collecting cases)).

However, alternative pleading of quasi-contract claims is appropriate only where the plaintiff "challenges the validity of the contract," such that there is a bona fide dispute as to whether an enforceable agreement exists at all. *Quintanilla*, 541 F. Supp. 3d at 353-54 (internal quotation marks omitted) (quoting *King's Choice Neckwear, Inc.* v. *Pitney Bowes, Inc.*, No. 09 Civ. 3980 (DLC), 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009), *aff'd*, 396 F. App'x 736 (2d Cir. 2010) (summary order)); *see also Doe* v. *Regents of Univ. of Cal.*,

41

672 F. Supp. 3d 813, 821 (N.D. Cal. 2023) ("A plaintiff 'may alternatively plead both a breach of contract claim and a quasi-contract claim, so long as [the plaintiff] pleads facts suggesting that the contract may be unenforceable or invalid.'" (quoting *Beluca Ventures LLC* v. *Einride Aktiebolag*, No. 21 Civ. 6992 (WHO), 2022 WL 17252589, at *4 (N.D. Cal. Nov. 28, 2022))); *Lance Camper Mfg. Corp.* v. *Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996) (explaining that when a party raises a breach of contract claim, the party "must allege that the express contract is void or was rescinded in order to proceed with [an alternative] quasi-contract claim").

No party disputes that a valid contract governed Plaintiff's purchase. (FAC ¶ 94). Indeed, Plaintiff herself pleads the contract's existence and sues for its breach. (*Id.* ¶¶ 94-96). Therefore, Plaintiff may not plead quasi-contract in the alternative to her breach of contract claim because there is no doubt that the relevant contract was valid. Where the existence of the governing agreement is undisputed, an unjust enrichment claim resting on the same operative facts cannot survive, even in the alternative, and "even where, as here, plaintiff's contract claim fails on the merits." *Quintanilla*, 541 F. Supp. 3d at 354 (citing *EBC I, Inc.* v. *Goldman, Sachs & Co.*, 5 N.Y.3d 11, 22-23 (2005)). As such, LSF's motion to dismiss Plaintiff's unjust enrichment claim is granted.

## F. The Voluntary Payment Doctrine Does Not Warrant Dismissal of Plaintiff's Claims

After considering the merits of Plaintiff's claims, the Court next addresses LSF's contention that the voluntary payment doctrine under both

California and New York law independently bars all of Plaintiff's claims.  (Def. Br. 9-10).[12]  In New York, the voluntary payment doctrine bars a plaintiff's recovery of a payment "voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law."  *Farina* v. *Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 197 (S.D.N.Y. 2019) (internal quotation marks omitted) (quoting *Spiro* v. *Healthport Techs., LLC*, 73 F. Supp. 3d 259, 276 (S.D.N.Y. 2014)); *accord Dillon* v. *U-A Colum. Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003).  In California, similarly, "[t]he voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts."  *Parino* v. *BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (citing *Am. Oil Serv.* v. *Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961)).

LSF argues that the voluntary payment doctrine bars Plaintiff's claims because Plaintiff "had full knowledge of the alleged fee long before she completed the checkout process."  (Def. Br. 9).  But the doctrine cannot support dismissal at this stage.  The voluntary payment doctrine is "an affirmative defense, the application of which 'may be inappropriate at the motion to dismiss stage.'"  *Farina*, 409 F. Supp. 3d at 197 (quoting *Wurtz* v. *Rawlings Co., LLC*, No. 12 Civ. 1182 (JFB) (AKT), 2014 WL 4961422, at *6

---

[12]  Here, "no choice-of-law conflict exists, so the Court need not make a final determination as to whether [California] or [New York] law governs."  *Urb. Eng'rs of N.Y., D.P.C.* v. *Urb. Eng'rs, Inc.*, No. 24 Civ. 6249 (KPF), 2026 WL 861649, at *14 n.12 (S.D.N.Y. Mar. 27, 2026) (citing *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993)).

(E.D.N.Y. Oct. 3, 2014)); *accord McKinnon* v. *Dollar Thrifty Auto. Grp., Inc.*, No. 12 Civ. 4457 (SC), 2013 WL 791457, at *3 (N.D. Cal. Mar. 4, 2013).

As LSF acknowledges, dismissal on an affirmative defense is "appropriate only if the necessary facts appear[ ] on the face of the complaint." *Dreien Opportunity Partners, LLC* v. *Avison Young - N.Y., LLC*, No. 18 Civ. 10087 (JPO), 2019 WL 4805650, at *5 (S.D.N.Y. Sept. 30, 2019); *accord McKinnon*, 2013 WL 791457, at *3. (*See* Def. Reply 2). A plaintiff is "not required to preemptively plead facts refuting the voluntary payment doctrine." *Franze* v. *Bimbo Foods Bakeries Distrib., LLC*, No. 17 Civ. 03556 (NSR) (JCM), 2019 WL 1244293, at *4 (S.D.N.Y. Mar. 15, 2019) (internal quotation marks omitted) (quoting *Spagnola* v. *Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009)); *see also Fradis* v. *Savebig.com*, No. Civ. 11-7275 (GAF) (JCx), 2011 WL 7637785, at *6 n.1 (C.D. Cal. Dec. 2, 2011) ("[T]he voluntary payment doctrine is an affirmative defense, which Plaintiffs are not required to address in their complaint.").

Here, the facts necessary to apply the voluntary payment doctrine do not appear on the face of the FAC. The doctrine applies only when payment is made "voluntarily" and "with full knowledge of the facts." *Parino*, 838 F. Supp. 2d at 908; *accord Farina*, 409 F. Supp. 3d at 197. But Plaintiff alleges the opposite: She did not know that the Fee existed or that it was optional. (FAC ¶¶ 44-45). Having already determined, *supra*, that a reasonable consumer could have plausibly failed to realize that the Fee was optional, the Court cannot conclude that Plaintiff's payment was made with full knowledge of the facts.

Unsurprisingly, those courts to have considered claims similar to Plaintiff's have reached the conclusion that the voluntary payment doctrine is inapplicable. *See Cantore*, 2026 WL 1353815, at *6; *Ramos*, 2025 WL 2633103, at *8. This Court agrees; the voluntary payment doctrine does not bar Plaintiff's otherwise adequately-pleaded claims. At the very least, "it is too early in this case to conclusively answer that question." *Spagnola*, 574 F.3d at 73.[13]

## G.    The Court Denies Leave to Amend as to the Dismissed Claims

The final question is whether the Court should grant Plaintiff leave to amend her claim under the Honest Pricing Law, Cal. Civ. Code § 1770(a)(29)(A), as well as her claims for breach of contract and unjust enrichment, each of which the Court dismissed above. (Pl. Opp. 25 (requesting leave to amend)). "[C]ourts should 'freely give leave to amend when justice so requires,' [but] they need not grant leave to amend if the amendments would be futile or cause undue delay, among other things." *In re ACTOS Direct Purchaser Antitrust Litig.*, 414 F. Supp. 3d 635, 650 (S.D.N.Y. 2019) (alteration adopted) (quoting Fed. R. Civ. P. 15(a)(2)), *aff'd sub nom. United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund* v. *Takeda Pharm. Co. Ltd.*, 11 F.4th 118 (2d Cir. 2021).

---

[13]    Because the voluntary payment doctrine cannot support dismissal at this stage for the above reasons, the Court need not reach Plaintiff's alternative contention that the voluntary payment doctrine is categorically inapplicable to UCL claims. (*See* Pl. Opp. 21).

45

The Court concludes that amendment would be futile as to each dismissed claim. Plaintiff's breach of contract claim fails because no contract existed until Plaintiff completed her purchase with the Shipping Protection Fee disclosed in her cart. No amended complaint can alter the moment of contract formation. Plaintiff's unjust enrichment claim fails because an undisputed express contract governs the transaction, which is not curable by better pleading. Plaintiff's theory under Section 1770(a)(29) of the CLRA fails because on the FAC's own allegations, the Fee was optional, not mandatory.

Plaintiff's requested amendments would not alter these outcomes: The discrepancy between the alleged $2.75 charge and the actual $0.98 charge is immaterial to the Court's analysis (*see* Migliaccio Decl., Ex. A), and additional choice-of-law allegations would be in vain, given that the Court has considered both California and New York law above. No other amendment could revive the three dismissed claims either. "The problem with [these] causes of action is substantive; better pleading will not cure it." *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave to amend is therefore denied.

## CONCLUSION

For the foregoing reasons, LSF's Request for Judicial Notice is GRANTED IN PART and DENIED IN PART, insofar as the Court takes judicial notice only of the Senate Committee Report. LSF's motion to dismiss is also GRANTED IN PART and DENIED IN PART. Specifically, it is DENIED as to Plaintiff's claims under the UCL, the FAL, and the CLRA, except that it is GRANTED as to Plaintiff's theory under Section 1770(a)(29) of the CLRA. LSF's motion to

46

dismiss is GRANTED as to Plaintiff's claims for breach of contract and unjust enrichment.

The parties are directed to submit a joint civil case management plan and proposed scheduling order on or before **August 3, 2026**.  The Clerk of Court is directed to terminate the pending motion at docket entry 33.

SO ORDERED.

Dated:    July 20, 2026
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge